IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS G. BROWN and<br>ELLA H. BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD CROW et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 3:21-cv-02998-L-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Rule 12(b)(6) Motion to Dismiss filed by Wells Fargo

Bank, N.A., David Rhodes, and Celeste Daffon (ECF No. 119). For the following

reasons, the District Court should GRANT the Motion and DISMISS with prejudice

all of Plaintiffs' claims against these Defendants.

**Background**

In their latest amended complaint (ECF No. 162), *pro se* Plaintiffs Thomas

G. Brown and Ella H. Brown assert claims against Wells Fargo Bank, N.A., as

successor-in-interest to First State Bank of Texas (First Bank), and two former

officers or employees of First Bank, David Rhodes and Celeste Daffon (collectively,

the "Bank Defendants"), among others, for violations of 42 U.S.C. § 1981 and the

Texas Deceptive Trade Practices Act (DTPA), and for "Civil Conspiracy under the

Common Law of Texas."

1

As alleged in their complaint, Plaintiffs started B&B Construction Company (B&B) in 1988. Sec. Am. Compl. 11. "[A]fter working for others for so many years," Plaintiffs, who are African-American, "viewed the launch of this business as their being able to finally get a piece of the 'American pie.'" *Id.*

Plaintiffs opened a business checking account for B&B at First Bank, where Defendant Rhodes served as president. *Id.* Later, in 1999, Thomas Brown entered into subcontractor agreements with at least two different companies affiliated with Glenn Lynch. *Id.* These agreements provided for a payment procedure, whereby Thomas would submit weekly "draw requests" to Lynch for funds to cover payroll and other expenses. *Id.* 11-12. After Lynch approved the request, he would leave a check for Thomas which could be deposited into B&B's checking account at First Bank. *Id.* 12.

While Thomas was working with Lynch, Rhodes introduced him to Richard Crow, a white man, as someone who could help Thomas obtain bonds for B&B. *Id.* 12-13. Thereafter, Thomas and Crow agreed to form Brown and Crow, a corporation. *Id.* 13. Thomas provided a $25,000 CD for the new corporation, and Crow handled the corporate formation. *Id.* But Plaintiffs allege Crow "forged" the incorporation documents, and the new company's corporate status was forfeited the next year for "non-payment of taxes." *Id.*

On April 2, 1999, Lynch issued a $58,263.73 check payable to B&B, in response to Thomas's draw request. *Id.* But instead of leaving the check for Thomas, Lynch gave the check to Crow. *Id.* Crow took the check even though he

was not authorized to do so and had no relationship to B&B. *Id.* 14. Crow never deposited the check into B&B's account at First Bank. *Id.* 14-15. Instead, Crow deposited the check into "Crow's personal account with his wife at First Bank." *Id.* 17. As a result of Crow's theft, Thomas did not have the funds to cover other checks he had written and, as a result, he was arrested. *Id.* 18. He suffered extreme embarrassment, mental anguish, and severe damage to his personal and professional reputations. *Id.*

Thomas spent months attempting to trace the check, to no avail. *Id.* 15. Thomas made multiple inquiries to Rhodes, who repeatedly denied that First Bank ever processed the check. *Id.* Months later, in the "summertime," Thomas discovered that Crow cashed the check at First Bank. *Id.* 15-16.

Thereafter, Thomas filed a criminal report against Crow and attempted to file a report against First Bank as well, but the police department refused to accept the report against First Bank. *Id.* 16. Thomas took a copy of the police report to First Bank to show Rhodes, but Rhodes was not at the bank. *Id.* 17. Instead, Thomas showed the report to Defendant Daffon, Rhodes's assistant, who tore up the report, in front of Thomas and his attorney, and threw it in the trash. *Id.* "[A]t this point," Thomas realized he was the victim of theft, negligence, and racial discrimination. *Id.* According to Plaintiffs, "there [was] no way that a white man would be treated the way [Thomas was] being treated." *Id.*

On April 21, 2000, Plaintiffs sued First Bank and others "regarding the stolen check and related matters" in the 86th Judicial District Court of Kaufman

County, Texas. *Id.* 18; *see Brown v. First State Bank of Tex.*, Nos. 56631, 56631-A. This litigation dragged on for decades. *Id.* Along the way, the first judge assigned to the case "let . . . [First Bank] out of the lawsuit." *Id.* 20. Ultimately, the entire case was dismissed in July 2019, *id.* 21; although, Plaintiffs allegedly did not learn of the dismissal until "late November 2021," when it was too late to appeal. *Id.*

Based on these facts, Plaintiffs filed this lawsuit in federal court on December 1, 2021. *See* Compl. (ECF No. 3). Several defendants named in Plaintiffs' original complaint filed motions to dismiss. In response, Plaintiffs sought leave to amend their complaint, *see* Mot. for Leave to File Am. Compl. (ECF No. 87), which the Court subsequently granted. Order (ECF No. 100). Several defendants—including the Bank Defendants—filed motions to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). For their part, the Bank Defendants argued Plaintiffs' pleading is factually deficient and Plaintiffs' claims are barred by the applicable statute of limitations and *res judicata*. Defs.' Mot. (ECF No. 119).

Plaintiffs then sought leave to file a second amended complaint, which the Court also granted. Order 3. (ECF No. 161). However, the Court instructed all defendants with pending motions to dismiss that they did not need to refile their dispositive motions because the pending motions are responsive to the second amended complaint. *See id.* Plaintiffs filed a response to the Bank Defendants' motion, *see* Resp. (ECF No. 135), and the Bank Defendants filed a Reply. (ECF No.

4

141). The Bank Defendants' motion is thus fully briefed and ripe for determination.[1]

## Legal Standards

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). However, when deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes*

---

[1] Plaintiffs also filed a Response (ECF No. 146) to the Bank Defendants' Reply, which the Court strikes because it violates the Northern District of Texas's Local Rules against sur-replies. *See* N.D. Tex. Civ. R. 7.1 (limiting briefing in motion practice to the motion, response, and reply); N.D. Tex. Civ. R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence"); *see also Official Brands, Inc. v. Roc Nation Sports, LLC*, 2017 WL 345616, at *3 (N.D. Tex. Jan. 23, 2017) (Boyle, J.) (applying Local Rule 56.7 to motion to dismiss); *Barrack v. UNUM Am. Life Ins.*, 409 F. Supp. 2d 782, 785 (N.D. Tex. 2006) (same). Plaintiffs did not seek leave to file their sur-reply, nor would the Court—in its discretion—have granted leave if requested. Accordingly, the Court STRIKES Plaintiffs' sur-reply. (ECF No. 146).

*Dredge & Dock Co. LLC,* 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555).

This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly,* 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly,* 550 U.S. at 557).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,* 920 F.3d 890, 900 (5th Cir. 2019) (citing *Norris v. Hearst Tr.,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 640 n.2 (5th Cir. 2005)).

Therefore, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris,* 500 F.3d at 461 n.9 (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)); *see also* Fed. R. Evid. 201(b)(2) (permitting courts to judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Statutes of limitations and *res judicata* are not expressly listed among the defenses that may be raised in a Rule 12(b) motion; rather, Rule 8(c) includes them as affirmative defenses. Fed. R. Civ. P. 8(c), 12(b); *Bradford v. Law Firm of Gauthier, Houghtaling & Williams, L.L.P.,* 696 F. App'x 691, 694 (5th Cir. 2017) (per curiam) (citing Fed. R. Civ. P. 8(c), 12(b)). But "when a successful affirmative defense appears on the face of the pleadings," and matters the court may judicially notice, "dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.,* 20 F.3d 1362, 1366 (5th Cir. 1994) (citing *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986)); *accord Hall v. Hodgkins,* 305 F. App'x 224, 227-28 (5th Cir. 2008) (per curiam) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper."); *see also Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.,* 9 F.4th 247, 253-54 (5th Cir. 2021) (holding that a court may grant a motion to dismiss based on limitations when it is evident from the pleadings that the action is time-barred); *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is

7

evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

## Analysis

A. <u>All of Plaintiffs' claims against the Bank Defendants are barred by applicable statutes of limitation</u>.

In this case, Plaintiffs allege that the Bank Defendants discriminated against them in violation of § 1981 when the Bank Defendants conspired with Lynch and Crow to deprive Plaintiffs of the $58,000 check made payable to B&B Construction and "cover[ed]-up their wrongful actions by misleading Plaintiffs and denying knowledge of the check which caused Plaintiffs to have to hire attorneys and others to vindicate their rights." Sec. Am. Compl. 22-24. Plaintiffs further allege that the Bank Defendants violated the Texas DTPA by falsely representing they would safeguard their checking account and protect their privacy, by endorsing Crow as a reputable business partner, and by committing "unconscionable acts" including Daffon tearing up the police report. *Id.* 37-38. Finally, Plaintiffs allege the Bank Defendants are liable for engaging in a civil conspiracy under Texas common law because they "aided and abetted" Crow's fraud and forgery. *Id.* 40. Significantly, all the alleged wrongful conduct occurred in 1999 or, at the latest, shortly after Plaintiffs filed their state court lawsuit against First Bank in 2000. *Id.*

The statute of limitations for a cause of action for violation of § 1981 has a four-year statute of limitations. 28 U.S.C. § 1658(a). And a claim under the Texas DTPA must be brought within two years "after the date on which the false,

8

misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Tex. Bus. & Com. Code § 17.565. A civil conspiracy claim is a derivative claim that takes the limitations period of the underlying tort—here fraud and breach of fiduciary duty. *Agar v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138 (Tex. 2019). Texas maintains a four-year statute of limitations for claims of fraud and breach of fiduciary duty. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4)-(a)(5).

Further, federal law determines when the limitations period begins to run. *Drake v. Fitzsimmons*, 2013 WL 775354, at *2 (N.D. Tex. Mar. 1, 2013) (Boyle, J.) (quoting *In re Monumental Life Ins.*, 365 F.3d 408, 420 (5th Cir. 2004)). Absent tolling, "the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *LeBlanc v. City of Haltom City*, 2011 WL 2149908, at *5 (N.D. Tex. May 31, 2011) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567 (5th Cir. 2001).

Here, Plaintiffs admit they perceived the alleged harm in 1999. *See e.g.,* Sec. Am. Compl.  15 (asked Rhodes about the check); *id.* 17 ("To [Plaintiffs] shock and dismay, [Daffon] tore up the report and threw it in the trash."); *id.* ("[Rhodes and Daffon] knowingly permitted Crow to deposit the stolen check"). Therefore, absent tolling, the applicable statutes of limitations expired—more than *two decades* ago—in 2001 for Plaintiffs' claims under the DTPA and in 2003 (or, at the latest

2004) for Plaintiffs claims under § 1981 and for civil conspiracy. Plaintiffs did not bring this suit until 2021.

Plaintiffs assert the "continuing violation doctrine" or "equitable tolling" applies to defeat the limitations defense. Resp. 8. (ECF No. 135). The continuing violation theory "accommodate[s] plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)). Plaintiffs' complaint fails to plead a sufficient factual basis to support the application of a continuing violation theory in this case. Rather, Plaintiffs' claims arise out of discrete conduct that occurred in 1999 relating to the alleged stolen check. Plaintiffs' broad and sweeping, non-specific generalizations about all the defendants are not sufficient to plead a continuing violation.

Nor are Plaintiffs entitled to "equitable tolling." As the Bank Defendants point out, Plaintiffs' request for tolling seemingly "stems from all of the defendants continuing to defend themselves in various lawsuits filed by the Plaintiffs regarding the same alleged actions that took place over 20 years ago." Defs.' Reply FN 3. This is not a basis for tolling a statute of limitations—and goes against the policy behind establishing limitation periods.

Therefore, all of Plaintiffs' claims against the Bank Defendants are barred by limitations and should be dismissed.

B. <u>All of Plaintiffs' claims against Wells Fargo are barred by the doctrine of claim preclusion.</u>

The Bank Defendants further argue *res judicata*—or claim preclusion—bars Plaintiffs' claims against Wells Fargo Bank, N.A. (Wells Fargo), as successor-in-interest to First Bank, because Plaintiffs previously litigated their claims against the bank in a lawsuit filed in April 2000, in the 86th District Court of Kaufman County, Texas, and those claims were dismissed on summary judgment and a final judgment was entered in the bank's favor.[2] Defs.' Br. 5. (ECF No. 120). "Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 213–14 (N.D. Tex. 2020) (citations omitted). A claim is precluded when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc.*, 428 F.3d at 571 (citation omitted). The Fifth Circuit uses the "transactional test" to determine whether two actions involve the same claim or cause of action.

---

[2] The Court takes judicial notice of all filings, orders, and judgments in *Brown v. First State Bank of Tex.*, Case No. 56631-A. in the 86th District Court of Kaufman County, Texas. *See Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 213 (N.D. Tex. 2020) (finding it appropriate, in context of claim preclusion analysis, to take judicial notice of filings from the plaintiff's previous lawsuits).

*Id.* (citation omitted). "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004)). The facts making up a transaction are "determined pragmatically"; however, the critical issue is "whether the two actions are based on the same nucleus of operative facts." *Id.* (internal quotation marks and citation omitted).

Here, all the elements of claim preclusion are satisfied. The first element of requires the parties to be identical or in privity. *Hous. Pro. Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016) (quoting *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013)). Parties are identical or in privity when both parties to the current litigation were parties to the prior litigation or in privity with parties to the prior litigation. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1341 (5th Cir. 1996) (citing *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n*, 798 S.W.2d 560, 563 (Tex. 1990)) (analyzing the elements of res judicata under Texas law, which are the same as the federal elements). "Privity" with respect to res judicata, "is recognized as a broad concept, which requires [the Court] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Russell v. SunAmerican Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). In itself, "the term privity . . . does not state a reason for either including or excluding a person from the binding effect of a prior judgment, but rather it

represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.*" Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (quoting Allan D. Vestal, *Preclusion/Res Judicata Variables: Parties*, 50 Iowa L. Rev. 27 (1964)). Parties can be in privity under Texas law if: "(1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *E.E.O.C. v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996)).

In 2000, Plaintiff Thomas Brown "d/b/a B & B Construction Co." filed a lawsuit against First Bank asserting claims arising out of the alleged stolen check. *See Brown v. First State Bank of Tex., No. 56631*. Plaintiff Ella Brown is married to Thomas Brown, and she is the co-founder and co-owner of B & B Construction Co. since its origin in 1988. Sec. Am. Compl.  11. Federal courts have deemed non-parties succeeding a party's interest in property and non-parties whose interests were adequately represented by an original party sufficiently close relationships to be in privity with the original parties. *See Sw. Airlines Co.*, 546 F.2d at 95 (citations omitted); *Amstadt*, 919 S.W.2d at 653. Although Ella was not a party to the state court action, she is in a sufficiently close relationship with Thomas to be in privity with him, and he adequately represented her interests in the litigation. *See Dennis v. First State Bank of Tex.*, 989 S.W.2d 22, 25, 27-28 (Tex. App.—Fort Worth 1998,

13

no pet.) (holding it was not an abuse of discretion to find that co-owners of a company who were also co-developers of a technology at issue in the case were in privity). And, Wells Fargo is a successor-in-interest to First Bank, the named defendant in the state court case. Indeed, Plaintiffs specifically allege that Wells Fargo is First Bank's successor-in-interest. Accordingly, the first element is satisfied.

The second element requires that a court of competent jurisdiction render the judgment in the prior action. In Plaintiffs' earlier lawsuit, the 86th District Court of Kaufman County, Texas, had jurisdiction over all the parties and claims. Accordingly, the second element is satisfied.

The third element requires the prior actions to have been concluded by a final judgment on the merits. In the earlier state court action, all of Plaintiffs' claims were dismissed on summary judgment and a final judgment was entered in the bank's favor. *See Brown v. First State Bank of Tex., No. 56631*, April 2019 Order & July 2019 Order. Accordingly, the third element is satisfied.

Finally, the fourth element requires the same claim or cause of action to have been involved in both the present and prior actions. But the claims asserted need not be identical—"[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citations omitted). As stated, the Fifth Circuit uses the "transactional test" to determine whether two actions involve the same claim or

14

cause of action. *Id.* (citation omitted). Courts are to consider pragmatically which facts constitute a "transaction" or "series," "giving weight to . . . whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Hous. Pro. Towing Ass'n,* 812 F.3d at 447 (quoting *Petro-Hunt, L.L.C.,* 365 F.3d at 396). "If the cases are based on the same nucleus of operative facts, the prior judgment's preclusive effect extends to all rights the original plaintiff had with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *United States v. Davenport,* 484 F.3d 321, 326 (2007) (internal quotation marks omitted) (citing *Petro-Hunt, L.L.C.,* 365 F.3d at 395).

Here, Plaintiffs' 2000 lawsuit and this action are based on the same nucleus of facts—the "stolen check and related matters." *See* Sec. Am. Compl. Plaintiffs state court petition contains almost an identical recitation of facts as their complaint in this action. And Plaintiffs sought the same relief—with the addition of injunctive relief in their current suit. Therefore, the Court finds Plaintiffs' claims in the state case are based on the same nucleus of operative facts as Plaintiff's claims in the present lawsuit. Accordingly, the fourth element is satisfied.

Plaintiffs' claims against Wells Fargo in this case are thus barred by the doctrine of claim preclusion because Plaintiffs previously filed a lawsuit involving the same parties, or parties with whom Plaintiffs and Wells Fargo are in privity, that resulted in a final judgment on the merits, rendered by a court of competent

jurisdiction, concerning the same claims. *See Test Masters Educ. Servs., Inc.,* 428 F.3d at 571 (citation omitted).

Plaintiffs' only argument against this result is that Wells Fargo waived its affirmative defense by failing to plead res judicata in response to the original complaint. This is incorrect. The Bank Defendants made similar claim preclusion arguments in their first Motion to Dismiss. *See* First Mot. to Dismiss FN 1. (ECF No. 16). Moreover, the live pleading is Plaintiffs' second amended complaint. *See* Ord. (ECF 186) ("[T]he second amended complaint supersedes the first amended complaint and is the only complaint with legal effect."). And the Bank Defendants timely raised the issue of claim preclusion in their pending motion to dismiss, which the court held was responsive to the second amended complaint. Thus, the defense is not waived.

C. <u>Plaintiffs failed to plead sufficient facts to state a claim for relief against Rhodes and Daffon.</u>

To succeed on a § 1981 claim, Plaintiffs must plead and prove "(1) that [they] are] a member of a racial minority; (2) that [the defendants] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 751 (5th Cir. 2001). Specifically, "[s]ection 1981 prohibits racial discrimination in the making and enforcement of public and private contracts." *Holt v. Wal-Mart Store, Inc.,* 2022 WL 272117 (W.D. Tex. Jan. 18, 2022) (citing *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 460 (1975). But Plaintiffs'

second amended complaint fails to allege the existence of any contract with Rhodes or Daffon. Instead, Plaintiffs' claims are premised upon an alleged conspiracy and fraud. Such allegations cannot support a claim under § 1981.

Further, because no claims survive against Rhodes or Daffon, Plaintiffs cannot maintain a cause of action for civil conspiracy. *See Roe v. United States,* 839 Fed. Appx. 836, 847 (5th Cir. 2020) ("Civil conspiracy is not a stand-alone tort. Rather, it is a derivative tort that requires the plaintiff to prove defendants' participation in an underlying tort.") (citing *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996)).

Lastly, Plaintiffs' general allegations that "all defendants" discriminated against them on account of their race, *see, e.g.*, Sec. Am. Compl. 10, are merely the sort of "unadorned accusations devoid of factual support" that cannot state a legally cognizable claim. *Iqbal*, 556 U.S. at 678.

In sum, Plaintiffs have failed to establish a plausible claim for relief against Rhodes and Daffon.

D. <u>Plaintiffs failed to plead sufficient facts to state a claim for injunctive relief.</u>

Lastly, Plaintiffs seek an injunction "enjoining [Wells Fargo], its officers, agents, employees, and all others acting for or succeeding Wells Fargo, from engaging in the discriminatory practices alleged in this complaint that discriminate against Plaintiffs on the basis of race, color, national origin, or sex." Sec. Am. Compl. 42. A court may grant injunctive relief only when the movant establishes that:

(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the [TRO or preliminary] injunction [are] not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction [or TRO] will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking injunctive relief has the burden of proving each of the four elements enumerated. *See Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. If a party fails to meet any of the four elements, the court cannot grant the injunction.

Here, Plaintiffs cannot meet the first element. Indeed, for all the reasons set forth above, Plaintiffs have not established a substantial likelihood they will prevail on the merits of any of their substantive claims against the Bank Defendants. Thus, the Court concludes that Plaintiffs have failed to allege facts showing they are entitled to injunctive relief against the Bank Defendants. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (explaining that plaintiff seeking a permanent injunction must establish, among other things, success on the merits of his claim). The Court should grant the Bank Defendants request to dismiss Plaintiffs' claim for injunctive relief.

## Opportunity to Amend

The Fifth Circuit encourages trial courts to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes,*

2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008) (Fitzwater, C.J.); *Sims v. Tester,* 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001) (Fitzwater, J.). Therefore, courts typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.); *Sims,* 2001 WL 627600, at *2. *Pro se* plaintiffs also may obtain leave to amend their complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.,* 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010) (Fitzwater, C.J.); *Scott,* 2008 WL 398314, at *1. However, dismissal with prejudice is appropriate if a court finds that the plaintiffs have alleged their best case. *Jones v. Greninger,* 188 F.3d 322, 327 (5th Cir. 1999) (per curiam); *see also Arkansas v. Wilmington Tr. N.A.,* 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (citing *Reliance Ins. v. La. Land & Expl. Co.,* 110 F.3d 253, 258 (5th Cir. 1997) (noting "judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (citing *Turnage v. Gen. Elec. Co.,* 953 F.2d 206, 208-09 (5th Cir. 1992)))).

Here, the Court has already allowed Plaintiffs to file two amended complaints. And Plaintiffs filed their second amended complaint after multiple defendants—including the Bank Defendants—had filed motions to dismiss. Plaintiffs thus have had a sufficient opportunity to address the deficiencies identified by the Bank Defendants, but have failed to do so. The Court should decline to give Plaintiffs yet another chance to develop their fatally flawed case.

19

*Reliance Ins.,* 110 F.3d at 258 (citing *Turnage, 953 F.2d at 208-09*). The Court

should dismiss with prejudice Plaintiffs' claims against the Bank Defendants.

## Recommendation

For the reasons stated, the District Court should **GRANT** the Bank

Defendants' Motion to Dismiss (ECF No. 119) and **DISMISS** with prejudice all of

Plaintiffs' claims against David Rhodes, Celeste Daffon, and Wells Fargo Bank,

N.A.

**SO RECOMMENDED.**

January 6, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).